<u>**CLOSING**</u>

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LYNNETTE O.** | |
| *Plaintiff,* | **Civil Action No. 20-14995** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | **OPINION** |
| *Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

 **THIS MATTER** comes before the Court on Plaintiff Lynnette O.'s[1] ("Plaintiff") request for review of Administrative Law Judge Meryl L. Lissek's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).  For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED.**

 **I.** **STANDARD OF REVIEW AND APPLICABLE LAW**

  **A.  Standard of Review**

 This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Commissioner's application of legal precepts is subject to plenary review, but her factual findings must be affirmed if they are supported by substantial evidence.  <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence is "such relevant evidence as a

---

[1] Pursuant to Standing Order 2021-10, the Court will refer to Plaintiff by her first name and last initial only.

reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "less than a preponderance").

 "[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Under this standard, an ALJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd, 590 F. App'x 167 (3d Cir. 2014).

## B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1).  To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test.  20 C.F.R. § 416.920.  First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity."  Id.  "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 416.972.  If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends.  Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe."  20 C.F.R. § 416.905(a).  The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied.  See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1.  20 C.F.R. § 416.920(d).  If so, a disability is conclusively established and the claimant is entitled to benefits.  Jones, 364 F.3d at 503.  If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments.  20 C.F.R. §§ 416.920(e); 416.945.  In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e).  Then, at step four, the Commissioner must decide if the claimant

has the RFC to perform his or her past relevant work.  20 C.F.R. §416.920(f).  If so, then the claim for benefits must be denied.  20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors."  20 C.F.R. § 416.960(c).  The claimant bears the burden of establishing steps one through four.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).  The burden of proof shifts to the Commissioner at step five.  <u>Id.</u>

## II.   BACKGROUND

### A.  General Background

Plaintiff applied for DIB and SSI Benefits in 2014, when she was thirty-eight years old. Administrative Transcript ("Tr.") 427, 431.  Plaintiff alleged disability due to injuries sustained in a car accident on October 5, 2013—nerve damage in her neck and the left side of her body, torn ligaments in her right foot, and injury to her right knee—as well as depression and asthma.  Tr. 500.  Plaintiff completed two and a half years of college.  Tr. 82.  She has past work experience as a customer service representative.  Tr. 55.  The ALJ found that Plaintiff was working full-time as a Retention Agent in 2017.  Tr. 82-83.

In a Function Report dated August 9, 2014, Plaintiff reported that she lived in an apartment with her two sons.  Tr. 532.  She stated that her daily activities included taking her younger son to camp in the morning, going for a walk in the park, coming home and showering, and then taking her older son where he needed to go.  <u>Id.</u>  She reported that she would spend her days relaxing or napping.  <u>Id.</u>  Some days she would go to doctor's appointments, and she attended physical therapy three times a week.  <u>Id.</u>  She prepared meals at least two times per week for about forty-five minutes

at a time, though she cooked less than she used to due to feeling depressed and tired. Tr. 534. Her older son often helped her with the cooking and cleaning and sometimes took care of her younger son when she was unable to do so. Tr. 533. Plaintiff reported that she had no difficulties dressing, bathing, shaving, feeding herself, or using the toilet, though she had some difficulty raising her arm above her head to fix her hair. Id. Plaintiff stated that she could wash the dishes, wash and iron her clothes, and clean her house. Tr. 534. She spent about four hours once a month shopping for food and paid bills and handled her finances independently. Tr. 535.[2]

**B. Procedural History**

Plaintiff filed applications for DIB and SSI Benefits on July 24, 2014, alleging that she became disabled on October 5, 2013. Tr. 427-39. Her claims were denied initially and again on reconsideration. Tr. 216-18, 228-33. After an administrative hearing, Judge Lissek determined that Plaintiff was not disabled. Tr. 190-205. At Plaintiff's request, the Appeals Council reviewed the decision and remanded the case for (1) consideration of the nature and severity of Plaintiff's alleged impairments; (2) further evaluation of Plaintiff's mental impairment; and (3) further consideration of Plaintiff's maximum RFC, including appropriate rationale with specific references to evidence in the record. Tr. 12, 211-15. The case was heard by Judge Lissek on remand. Following a hearing held on July 25, 2019, Judge Lissek again concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 33-75, 12-24.

Plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 1. The Appeals Council denied Plaintiff's request for review on September 11, 2020. Tr. 1-3. This Action followed. Plaintiff filed her Complaint in this Court on October 26, 2020. ECF No. 1.

---

[2] The Parties have summarized the medical evidence in their respective briefs. See Pl. Mem. at 3-9. ECF No. 15; Def. Mem. at 2-7, ECF No.16. The Court will address medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

### C.  ALJ Decision

The ALJ determined that Plaintiff was not disabled under the five-step framework.  At step one, the ALJ concluded that despite evidence that Plaintiff was employed, she had not engaged in substantial gainful activity since October 5, 2013.  Tr. 15.  At step two, the ALJ determined that Plaintiff's post-traumatic stress disorder (PTSD), depression, post-concussion syndrome, post-traumatic headaches, cervical spine injury, bursitis, rotator cuff syndrome, lumbar spine injury, internal derangement of the left knee, thoracic myositis, nerve damage in neck, nerve damage on left side of body, torn ligaments in right foot, asthma, sickle cell trait, iron deficiency, and idiopathic thrombocytopenic purpura (ITP) qualified as severe impairments.  Tr. 16.  At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment.  Id.

Before moving on to step four, the ALJ found Plaintiff's RFC to be as follows:

> [T]he Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can climb stairs and bend occasionally.  The claimant can use her hands to do fingering and grasping— frequently.  The claimant can do jobs that do not require overhead work.  The claimant can have occasional contact with high humidity, extremes in temperature and undue amounts of dust or known pulmonary irritants.  The claimant can work with no contact with unprotected heights or dangerous machinery.  The claimant can do work that can be learned in one month or less and that involves simple instructions.  The claimant can have occasional contact with supervisors and minimal contact with the general public.  The claimant can work in proximity of co-workers but not together with them.  Lastly, based on fatigue, side effects of medication and pain including headaches, the claimant will be off task five percent of an eight-hour day.

Tr. 18.  In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including objective medical and psychiatric reports, medical opinion evidence, Plaintiff's testimony, and testimony supplied by Plaintiff's friend.  Tr. 16-22.  The ALJ found that while

Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, she concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record. Id.  The ALJ concluded that despite Plaintiff's testimony and the evidence supporting her physical and psychological limitations, Plaintiff has been able to perform work with the above RFC since the date of the alleged onset of her disability.  Tr. 22.

At step four, the ALJ found that Plaintiff is unable to perform past relevant work.  Tr. 22. At step five, the ALJ concluded that jobs that Plaintiff can perform exist in significant numbers in the national economy.  Tr. 23-24.  The ALJ reached this conclusion with the assistance of a vocational expert ("VE") who evaluated Plaintiff's age, education, work experience, and RFC. Given Plaintiff's classification as a younger individual with at least a high school education who can speak English, along with the limitation of sedentary work with occasional bending and stair climbing, the VE determined jobs available to Plaintiff included addresser, document preparer, and assembler.  Tr. 23.  The ALJ concluded that Plaintiff was not disabled within the meaning of the Act from October 5, 2013 through the date of the decision.  Tr. 24.

## III.   ANALYSIS

Plaintiff asserts that the ALJ's ruling was erroneous in three ways.  First, Plaintiff maintains that the ALJ improperly evaluated the medical evidence as to the severity and disabling effects of her physical and mental impairments.  Plaintiff's Brief ("Pl. Br.") at 20-27, ECF No. 15. Second, she argues that the RFC is conclusory and not based on substantial evidence.  Pl. Br. at 27-30.  Finally, Plaintiff asserts that the ALJ's determination that Plaintiff could perform other jobs in the labor market was not supported by substantial evidence.  Pl. Br. at 29-30.

**A. The ALJ's findings as to the severity and disabling effects of Plaintiff's physical and mental impairments are supported by the medical evidence.**

Plaintiff asserts that the ALJ improperly evaluated the medical evidence regarding her severe impairments at Step three. The Court disagrees.

To meet or equal a listed impairment, a claimant's impairment must satisfy all criteria of the listing. 20 C.F.R. 404.1525(d); see Jones, 364 F.3d at 504 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (quotation omitted)). A claimant's impairment is "medically equivalent" if it is at least equal in severity and duration to the criteria of a listed impairment. 20 C.F.R. § 404.1525(6). The burden is on the plaintiff to present medical findings that show that her impairment matches or is equal in severity to a listed impairment. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 126 n.2 (3d Cir. 2000).

Plaintiff first argues that the ALJ's determination that her physical impairments did not match or equal the listing criteria for musculoskeletal disorders was not supported by substantial evidence. Pl. Br. at 19. To satisfy Listing 1.04A, Disorders of the Spine,[3] Plaintiff must show nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine).[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A, see Hernandez v. Comm'r of Soc. Sec., 198 F. App'x 230, 234 (3d Cir. 2006). Plaintiff asserts that

---

[3] Plaintiff relies on the medical criteria for evaluating musculoskeletal disorders in the revised Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root). While this revised Listing became effective on April 2, 2021, Plaintiff's case was decided on October 15, 2019, prior to the effective date. Thus, Listing 1.04 is applicable to this decision.

[4] While Plaintiff did not reference Listing 1.04 in her brief, there is no medical evidence to show, nor does Plaintiff assert, that she suffers from either spinal arachnoiditis, a requirement for Listing 1.04B, or an inability to ambulate effectively, as required for Listing 1.04C. Therefore, this Court will look only at Listing 1.04A in assessing Plaintiff's claim.

the record showed evidence of nerve root compression, radiculopathy, and limited fine and gross movements, and that she therefore satisfies the listing criteria.  Pl. Br. at 23.

However, the ALJ failed to find medical evidence of sustained nerve root compression, motor loss, reflex loss, sensory loss, or consistent positive straight leg raising examinations in both the sitting and supine position, as is necessary to meet Listing 1.04.  Tr. 16, 20.  Judge Lissek considered the medical evidence collected immediately following Plaintiff's alleged disability onset in 2013 and compared those records with later records that showed a marked improvement in Plaintiff's condition.  Tr. 19-20.  While her symptoms were acute immediately following the car accident, with physical therapy and medication for pain reduction, the ALJ observed that Plaintiff's condition improved significantly.  Tr. 20.  Judge Lissek noted that a neurological consultation by Dr. Steven Dane days after Plaintiff's accident showed several provisional diagnoses including cervical spine injury with nerve root involvement, lumbar spine injury with nerve root involvement, sacral spine injury with nerve root involvement, and injury to the dorsal root.  Tr. 729.  Records from Dr. Paul Misthos dated November 1, 2013, four weeks after the accident, supported these findings and showed, among other diagnoses, sustained injury to Plaintiff's cervical spine with nerve root involvement, lumbar spine injury with nerve root involvement, and sprain/strain of joint, ligament, muscle, or tendon of the left shoulder.  Tr. 769-70.

Medical records from 2014, however, showed marked improvement in Plaintiff's underlying condition and subjective reporting.  An MRI from February 2014, five months after the accident, showed no disc herniation and only mild disc bulging.  Tr. 802-04.  No evidence of nerve root compression was noted.  Id.  Dr. Patel of the Division of Disability Services reported on September 30, 2014 that there was no evidence of acute distress and that Plaintiff was walking

9

without any supportive device and with a normal gait.  Tr. 822.  Moreover, records from Plaintiff's physical therapy treatments show significant improvement in both objective measures and her subjective accounts of pain and discomfort.  Tr. 834-53.  Two months into her physical therapy regiment in 2014, Plaintiff showed moderate to minimal loss of mobility in the cervical spine and good improvement in left upper extremity strength.  Tr. 853.  Notably, Plaintiff reported feeling much better at the end of each physical therapy session.  Tr. 837-63.  In August 2014, Dr. Kaufman reported that Plaintiff was "clearly improving" and by October 2014 Dr. Kaufman found that Plaintiff was doing "exceptionally well."  Tr. 865, 874.  By December of 2014, Dr. Kaufman noted that there were no trigger points or tender points within the cervical, thoracic, or lumbar spine.  Tr. 871.  Plaintiff's motor exam in the upper and lower extremities was five out of five.  Id.

The ALJ found that a year after her alleged disabling accident, Plaintiff did not exhibit the required symptoms to meet the conditions of Listing 1.04A.  The ALJ found that there was no evidence of persistent sensory or reflex loss, motor loss, or atrophy, nor significant limitation of motion in the spine.  Tr. 20.  Notably, the ALJ observed that there was no evidence of nerve root compression, as is required to meet Listing 1.04A.  See Hernandez, 198 F. App'x at 234-35 (finding that because the plaintiff did not produce any evidence "specifically indicating nerve root compression as characterized by motor or sensory loss, nor has any such evidence been found in a review of the record," the ALJ could not find that she met the requirements of the listing).

Next, Plaintiff argues that the ALJ's findings regarding her psychological limitations were contradicted by the medical evidence.  Pl. Br. at 23.  The ALJ evaluated medical evidence regarding Plaintiff's psychological impairments and found that her severe impairments included PTSD and depression, but that neither condition met or medically equaled the criteria of Listings

12.04 or 12.06, respectively.  Tr. 16.  Specifically, Judge Lissek considered whether Plaintiff's medical records supported a finding of paragraph B criteria, which requires at least one extreme or two marked limitations amongst four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.  A marked limitation means that functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited.  Id.  An extreme limitation means that Plaintiff is unable to function independently, appropriately or effectively, and on a sustained basis.  Id.

Contrary to Plaintiff's allegations that the ALJ's findings misrepresented Dr. Sozzi's 2014 opinion, Judge Lissek based her analysis partly on Dr. Sozzi's opinion but tempered those findings with Dr. Fulford's 2015 opinion—when Plaintiff's symptoms had improved—in determining that Plaintiff's limitations were moderate.  Tr. 17.  In doing so, Judge Lissek recognized Plaintiff's improvement over time but also gave weight to Plaintiff's reported symptoms and Dr. Sozzi's earlier report.

Judge Lissek found that Plaintiff did not have a marked or extreme limitation in any of the required areas of functioning.  In finding that Plaintiff failed to meet the paragraph B criteria of these listings, Judge Lissek observed that Plaintiff had moderate limitations in her ability to understand, remember, or apply information, and a moderate limitation in her ability to interact with others.  Tr. 17.  This determination was based in part on Plaintiff's medical records from June 2015 that showed she was oriented, had good mental control and concentration, her short term auditory recall memory was within normal limits, and she had fair abstract thinking.  Tr. 880.  In the spring of 2014, she showed coherent and relevant speech patterns and good language comprehension.  Tr. 812.

11

As to concentrating, persisting, or maintaining pace and adapting or managing oneself, the ALJ found that Plaintiff had a mild limitation. Tr. 17. The ALJ noted that Plaintiff was able to take care of herself and her children, maintain her household, and adhere to a work schedule since 2016. Tr. 17, 57, 881. In his June 2015 report, Dr. Fulford noted that Plaintiff could make her own financial and medical decisions, took public transportation independently, showed good judgment, and was able to care for herself and her children. Tr. 881.

This medical and observational evidence supports the ALJ's determination that Plaintiff had neither a marked or extreme limitation that would prevent her from doing basic work activities. See Hernandez, 198 F. App'x at 234 (affirming the ALJ's holding that Plaintiff's psychological impairments were not severe and supporting the ALJ's reliance on medical reports that failed to indicate how the Plaintiff "would be unable to perform work activities because of any mental impairment that may be present"). Relevant to Plaintiff's physical and mental impairments, the ALJ found that Plaintiff's daily activities were not limited to the extent one would expect, given her subjective complaints. Tr. 21. See Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010) (finding that the ALJ properly considered Plaintiff's ability to perform daily tasks, such as "dropping off and picking up his daughter; doing household chores such as washing dishes, taking out the garbage and folding clothes; and exercising when he can," and was justified in weighing this evidence against conflicting medical evidence to reject Plaintiff's subjective complaints as inconsistent).

Based on the above, the ALJ sufficiently analyzed Plaintiff's impairments to determine whether they met or medically equaled the relevant listings and appropriately determined that the Plaintiff is not per se disabled. The Court therefore finds that the ALJ's step three analysis was supported by substantial evidence.

**B. The ALJ correctly assessed Plaintiff's RFC with a detailed discussion of the available medical and nonmedical evidence.**

Plaintiff next argues that the RFC is not based on substantial evidence. The Court again disagrees.

An RFC should account for the most activity that a plaintiff can perform despite her limitations. 20 C.F.R. § 416.945(a). The ALJ ultimately is "responsible for making an [RFC] determination based on the medical evidence," and must "include a narrative discussion describing how the evidence supports each conclusion." Harris v. Comm'r of Soc. Sec., No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010) (citing Social Security Ruling 96-8P). This Court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. Holley, 975 F. Supp. 2d at 467. Plaintiff has the burden to demonstrate how any alleged error "could have affected the outcome of [her] disability claim." Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (internal quotation marks and citation omitted).

Plaintiff maintains that Judge Lissek's assessment of her RFC failed to comply with SSR 96-8p because it contained conclusory arguments and did not include reference to supporting evidence. Pl. Br. at 28. However, while the ALJ found that Plaintiff's impairments might reasonably be expected to cause her alleged symptoms, she determined that Plaintiff's subjective testimony of the intensity, persistence, and limiting effects of her conditions were not supported by either the medical evidence or other evidence in the record. Tr. 18. As for Plaintiff's physical limitations, the ALJ gave great weight to the opinion of Dr. Wells, Plaintiff's doctor with whom she had a long-term treatment relationship. In 2017, Dr. Wells reported that Plaintiff could perform light or sedentary work, a designation less limited than Judge Lissek's RFC determination. Tr. 938. Judge Lissek noted that Dr. Wells' assessment was supported by objective medical evidence

13

and familiarity with Plaintiff's medical conditions.  Tr. 21.  The ALJ also gave some weight to the opinion of the State agency and noted that this opinion considered Plaintiff's subjective reports of pain and other symptoms and used her reporting in conjunction with the medical evidence to support its opinion.  Tr. 21.

This Court finds that in formulating Plaintiff's RFC, the ALJ not only relied on and consistently documented the medical evidence in the record, but also appropriately considered the fact that Plaintiff has been able to function effectively in her daily life and work activities since at least 2016.  Tr. 18-22.  The ALJ noted that Plaintiff's daily activities were not limited to the extent one would expect, given her reports of disabling symptoms and limitations.  Tr. 21.  The ALJ considered the fact that Plaintiff was able to take care of her daily needs, maintain her household, care for her children, and work full-time outside the home.  Tr. 21, 45, 83.  See Holloman, 639 F. App'x at 815 (upholding the ALJ's reliance on "reports from multiple medical consultants showing that [the plaintiff] was capable of light work and [the plaintiff's] own testimony about the activities of daily life that he was able to perform").  The ALJ properly assessed Plaintiff's RFC after reviewing the entire record including medical evidence, Plaintiff's subjective complaints of pain and other symptoms, and relevant information about Plaintiff's daily activities and abilities.  Tr. 18-22.  In fact, the ALJ's RFC determination was more limited than the recommendation made by Plaintiff's physician.  Tr. 21.  Therefore, the Court discerns no error.

### C. The ALJ's questioning of the Vocational Expert was supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred by posing questions to the VE that were not supported by substantial evidence regarding Plaintiff's limitations.  Pl. Br. at 29-30.  She argues that the ALJ failed to pose hypothetical questions to the VE that contained all the limitations that Plaintiff believed were well documented in the record, including Plaintiff's limited use of her left

hand, and her inability to walk, stand, or sit, as required in a sedentary occupation.  Pl. Br. at 29. The Court finds this argument unavailing.

The ALJ is not required to query the VE on every impairment alleged by a claimant, but only those that are established by medical evidence.  See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) ("The hypotheticals posed must 'accurately portray' the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'") (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)). Because the ALJ did not find evidence in the record that Plaintiff had limited use of her left hand or an inability to walk, stand, or sit, she was not required to include these limitations in her questions to the VE.  See Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999) (holding that the hypothetical used by the ALJ was appropriate because the ALJ had earlier rejected the excluded limitations as inconsistent with the objective medical evidence in the record as a whole).  The Court thus finds that the ALJ did not err in excluding from her hypothetical questions to the VE limitations that were not supported by evidence.

**IV.  CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

Date: July 29, 2022                               */s/ Madeline Cox Arleo*
                                                  **Hon. Madeline Cox Arleo**
                                                  **UNITED STATES DISTRICT JUDGE**